IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ANDRES ARELLANES,**

      **Plaintiff,**

v.    No. CIV-09-00432 BB/RHS

**JASON CLARKE, DAYNA BROCK,
JOEL LUCHETTI, EDDIE PADILLA,
PATRICK APODACA,
in their individual capacities, and
CITY OF ALBUQUERQUE,**

      **Defendants.**

## FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, TORT CLAIMS, AND DAMAGES

Plaintiff Andres Arellanes, through his counsel of record, Kennedy & Han, P.C., brings this Complaint for violation of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for torts under the New Mexico Tort Claims Act. Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 42 U.S.C. §§1983 and 1988 and 28 U.S.C. § 1343, with pendent jurisdiction over the state law claims. Venue is proper in this district, as Defendants are all residents of New Mexico and all of the acts complained of occurred in New Mexico. Plaintiff's causes of action arose in New Mexico.

### PARTIES

2.  Plaintiff Andres Arellanes is a resident of the State of New Mexico.

3.  Defendants Jason Clarke, Dayna Brock and P.K. Apodaca were, at all relevant

times herein, law enforcement officers employed by the Albuquerque Police Department, an agency of the City of Albuquerque.

4. Defendants Joel Lucchetti and Eddie Padilla were, at all relevant times herein, Agents of the Special Investigations Division, a governmental agency operated by the New Mexico Department of Public Safety.

5. At all times material to this complaint, Defendants Clarke, Brock, Apodaca, Lucchetti, and Padilla were acting within the scope of their employment and under color of state law. The individual Defendants are sued in their individual capacities.

## FACTUAL BACKGROUND

6. On or about September 8, 2007, Plaintiff Andres Arellanes was walking on the sidewalk on Central Avenue in Albuquerque around 1:30 a.m., in order to meet his older brother Ralph at a prearranged place and time for a ride back to Plaintiff's apartment.

7. As he was walking east toward the intersection of Central Avenue and Third Street, Plaintiff heard the sound of horses' hoofs approaching from behind.

8. Plaintiff turned as he was walking and observed two mounted patrol officers following him as he walked down the street.

9. As Plaintiff was walking past the Carom Club, a vehicle drove by blasting mariachi music, and in response Plaintiff performed some cha-cha style dance steps to the beat.

10. One of the mounted officers instructed Plaintiff to stop and then told him to do the dance again.

11. After Plaintiff performed a few more dance steps, he was immediately surrounded by two additional mounted patrol officers and several foot patrol officers so that he was

effectively boxed in and prevented from continuing to walk on the sidewalk.

12. Defendant Jason Clarke demanded that Plaintiff produce identification, and as Plaintiff obediently retrieved his wallet from his pocket, Defendant Clarke grabbed it from him without affording Plaintiff the opportunity to comply with the demand for identification.

13. Defendant Clarke rifled through the compartments of Plaintiff's wallet, without seeking or obtaining Plaintiff's consent.

14. After removing both Plaintiff's and his brother Ralph's identification from Plaintiff's wallet, Defendants Clarke and Dayna Brock began to interrogate Plaintiff about what he had been drinking. Plaintiff responded that he had not been drinking and explained that he had picked up his brother's identification after his brother had dropped it.

15. Defendants began to hurl epithets at Plaintiff, calling him "fucking faggot" and "queer."

16. Immediately and without provocation, Defendant Brock, who was behind Plaintiff, grabbed his arm. Surprised by this sudden and unprovoked physical grabbing, Plaintiff reflexively jerked his arm back.

17. Defendants then handcuffed Plaintiff and tripped him, causing him to fall and hit the back of his head on the sidewalk pavement.

18. As a result of this fall, Plaintiff briefly lost consciousness; when he began to regain consciousness, Defendants were beating Plaintiff, punching him, kicking him, and battering him with their batons.

19. Defendants threw Plaintiff into a patrol vehicle face first.

20. Defendant Clarke approached Plaintiff once again and demanded to know where he had been drinking; then he grabbed Plaintiff by the back of the neck, violently shaking him.

21. After Plaintiff began to cough and spit up blood from his injuries, Defendant Clarke placed a "spit sock" over Plaintiff's head and administered another beating.

22. After Plaintiff was both handcuffed and placed facedown with the spit sock over his head, Defendant Brock deployed her Taser weapon, administering several cycles of a "drive stun tase" to his back.

23. Although Defendants had handcuffed, beaten, and tased Plaintiff, Defendant Lucchetti placed Plaintiff in shackles, connecting his hands to his feet.

24. On information and belief, Defendant Eddie Padilla witnessed these events, failed to intervene, and provided support for Defendant Clarke's, Brock's and Lucchetti's actions.

25. Plaintiff was indicted by the grand jury on four counts of felony battery on a police officer and one count of aggravated assault on a police officer with a deadly weapon.

26. In his written findings on Issues, Facts, and Conclusions dated June 12, 2008, the Independent Review Officer for the City of Albuquerque Police Oversight Commission determined that Defendant Brock failed to comply with Albuquerque Police Department General Order 1-39-1A2 & 5 which requires that officers use their tape and digital recorders to document arrests for disorderly conduct and for those contacts where there is reason to believe that a complaint could result.

27. In his written findings on Additional Issues, Facts, and Conclusion dated July 10, 2008, the Independent Review Officer for the City of Albuquerque Police Oversight Commission determined that Defendants Brock and Clarke failed to comply with Albuquerque Police Department General Order 1-04-4W which requires that personnel truthfully answer all questions specifically directed to them and narrowly related to the scope of employment and operations of the Department. Specifically, the Independent Review Officer found that these

EXHIBIT A

Defendants were not truthful when they stated in interviews and in their Grand Jury testimony that Plaintiff grappled or tackled a police horse, with Defendant Brock explicitly stating she witnessed these alleged activities. The Independent Review Officer noted that neither officer wrote about this in the narratives contained in their police reports and that the horse officers, Plaintiff, and the witnesses all agreed that the incident did not occur.

28. On August 26, 2008, Assistant District Attorney Elizabeth A. Counce entered *Nolle Prosequi* in the criminal case filed against Plaintiff, in the interests of justice, due to insurmountable problems regarding witnesses, credibility and lack of sufficient evidence, including an internal review of the case and its facts by the Albuquerque Police Department.

29. Defendant Apodaca personally approved the Uniform Incident Reports filed by Defendants Brock, Padilla, Luchetti and Clarke. On information and belief, as a supervising officer, Defendant Apodaca maintained a custom and practice of failing to properly punish or discipline subordinate officers who commit civil rights violations, who have internal police or Independent Review Office findings against them indicating that they have committed civil rights violations, and who have actual court judgments against them for civil rights violations. On information and belief, Defendant Apodaca, as a supervising sergeant, had personal knowledge of civil rights judgments which had been entered against several of the subordinate individual defendants.

30. The City of Albuquerque employs each of the named Defendants as a law enforcement officer. The City of Albuquerque maintains an official policy of refusing to settle any civil rights claims involving claims against its law enforcement officers. On information and belief, the rationale for this policy is that the courts are better equipped than city administrators to determine civil rights violations, and that discipline and punishment are more appropriate

following a court ruling. On information and belief, despite this official policy, the City of Albuquerque maintains a custom and practice of failing to properly punish or discipline law enforcement officers who commit civil rights violations, who have internal police or Independent Review Office findings against them indicating that they have committed civil rights violations, and who have actual court judgments against them for civil rights violations.

## COUNT I - 
## UNLAWFUL SEIZURE IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS AGAINST DEFENDANTS CLARKE, BROCK, LUCHETTI & PADILLA

31. Plaintiff incorporates paragraphs 1 through 30 as though fully set forth herein.

32. Defendant Clarke, Brock, Luchetti and Padilla seized Plaintiff on September 8, 2007, without reasonable suspicion or probable cause to believe that Plaintiff had committed or was committing a crime.

33. The actions of these Defendants in seizing Plaintiff and the manner in which Defendants effected the seizure of Plaintiff were objectively unreasonable, intentional, willful, and wanton, and done in gross and reckless disregard of Plaintiff's rights.

34. Defendants' unlawful seizure of Plaintiff proximately caused Plaintiff to suffer damages and injuries. These damages include physical injuries, pain and suffering, property damage, lost liberty, and psychological and emotional distress.

WHEREFORE, Plaintiff requests compensatory and punitive damages against Defendants Clarke, Brock, Luchetti and Padilla, together with all costs and attorneys fees.

**COUNT II -**
**EXCESSIVE USE OF FORCE IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS AGAINST DEFENDANTS CLARKE, BROCK, LUCHETTI & PADILLA**

35.    Plaintiff incorporates paragraphs 1 through 34 as though fully set forth herein.

36.    Defendants Clarke, Brock, Luchetti and Padilla used excessive force in seizing, arresting, and detaining Plaintiff on September 8, 2007, including but not limited to, jerking Plaintiff's arm behind his back; tripping Plaintiff, causing him to fall backward and strike his head on the sidewalk; beating, kicking, and striking him with batons; terrorizing him by screaming homophobic epithets; shaking him violently after he had already once lost consciousness; putting a "spit sock" over his head while he was spitting and coughing up blood; shackling his wrists and feet together; and administering several cycles of a "drive stun tase" to his back.  Defendants Clarke, Brock, Luchetti and Padilla used this level of force without reasonable suspicion or probable cause to believe that Plaintiff posed a physical danger to anyone and without giving Plaintiff an opportunity to comply with their requests. The level of force used was not proportionate to the circumstances of the arrest.

37.    Defendants' use of excessive force proximately caused the Plaintiff's damages and injuries, including physical injuries, physical pain and suffering, lost liberty, property damage, and psychological and emotional distress.

WHEREFORE, Plaintiff requests compensatory and punitive damages against Defendants Clarke, Brock, Luchetti and Padilla, together with all costs and attorneys fees.

## COUNT III –
## UNLAWFUL SEIZURE OF PROPERTY IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS AGAINST DEFENDANTS CLARKE, BROCK, LUCHETTI & PADILLA

38. Plaintiff incorporates paragraphs 1 through 37 as though fully set forth herein.

39. Defendants Clarke, Brock, Luchetti and Padilla seized Plaintiff's property on September 8, 2007, including his wallet. This seizure took place without reasonable suspicion or probable cause to believe that the property being seized aided in, or was in any way related to, the commission of any crime.

40. Defendants' actions in seizing Plaintiff's property and the manner in which these Defendants effected this seizure were objectively unreasonable, intentional, willful, wanton, and done in gross and reckless disregard of Plaintiff's rights.

41. Defendants' seizure of Plaintiff's property proximately caused Plaintiff's damages and injuries, including lost use of his property and psychological and emotional distress.

WHEREFORE, Plaintiff requests compensatory and punitive damages against Defendants Clarke, Brock, Luchetti and Padilla, together with all costs and attorneys fees.

## COUNT IV –
## CLAIMS OF SUPERVISORY AND MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 AGAINST DEFENDANTS THE CITY OF ALBUQUERQUE AND PATRICK APODACA

42. Plaintiff incorporates paragraphs 1 through 41 as though fully set forth herein.

43. The need to discipline, train and supervise law enforcement officers who have been the subject of civil rights complaints by citizens in order to reduce the pervasive and unreasonable risk of constitutional injury is self-evident. The need to properly discipline, train and supervise law enforcement officers who have actual court judgments against them for civil

rights violations is even more obvious.

44. Inadequate discipline and supervision of officers with previous civil rights judgments against them was so likely to result in grave constitutional injury to citizens that failure of Defendant Apodaca and other supervisory officers to provide adequate discipline and supervision in this area constituted a deliberate indifference to and acquiescence in such injury.

46. The City of Albuquerque's "no-settlement" policy is justified, at least in part, on this acknowledged need to properly punish, discipline, and supervise law enforcement officers who have civil rights judgments against them.

45. Despite the official policy regarding imposition of punishment, discipline and supervision following a civil rights judgment, Defendant Apodaca and other supervisors developed a custom, practice, or policy of Defendant City of Albuquerque that intentionally or recklessly disregarded the need for proper discipline and supervision. This custom and practice was a primary factor behind the excessive use of force and unlawful seizure performed by Defendants Clarke, Brock, Luchetti and Padilla against Plaintiff as set forth above.

46. The continuing decisions of Defendant Apodaca and other police supervisors in this regard was the act of a final policymaker for which Defendant City of Albuquerque may be held liable.

47. The actions of Defendant Apodaca and other supervisors, and the custom, practice, or policy pursuant to which the actions were taken, were objectively unreasonable and intentional, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's decedent's rights.

48. The actions of Defendant Apodaca and other supervisors, and the custom, practice, or policy pursuant to which the actions were taken, proximately caused Plaintiff's

constitutional injuries as set forth above.

49.     Defendants Apodaca and the City of Albuquerque's failure to adequately discipline and supervise law enforcement officers, including Defendants Clarke, Brock, Luchetti and Padilla constituted deliberate indifference to Plaintiff's Fourth and Fourteenth Amendment rights.

50.     As a result of the actions of Defendants Apodaca and the City of Albuquerque, Plaintiff suffered damages and injuries, including physical injuries, physical pain and suffering, lost liberty, property damage, and psychological and emotional distress.

WHEREFORE, Plaintiff requests compensatory and punitive damages against Defendant Apodaca, and compensatory damages against the Defendant City of Albuquerque together with all costs and attorneys' fees.

## COUNT V –
## STATE TORT CLAIMS AGAINST ALL DEFENDANTS

51.     Plaintiff incorporates paragraphs 1 through 50 as though fully set forth herein.

52.     The individual Defendants intentionally falsely arrested, assaulted, battered, falsely imprisoned, and committed hate crimes, as defined in NMSA § 31-18-B-2, subds. (D) and (E), against Plaintiff on September 8, 2007.

53.     The City of Albuquerque received actual notice of the occurrence within the meaning of the New Mexico Tort Claims Act.

54.     Defendants' actions as set forth above proximately caused Plaintiff damages and injuries. These damages include physical pain and suffering, property damage, lost liberty, and psychological and emotional distress.

55.     The City of Albuquerque and the New Mexico Department of Public Safety Special

Investigations Division, as the individual defendants' employers, are vicariously liable for torts they committed within the scope and course of their duties as law enforcement officers.

    WHEREFORE, Plaintiffs request compensatory and damages against all Defendants, together with all costs and fees.

## JURY TRIAL DEMAND

56.    Plaintiff hereby demands a trial by jury.

    Respectfully submitted,

    **KENNEDY & HAN, P.C.**

    /s/ Darin Foster
    PAUL J. KENNEDY
    MARY Y.C. HAN
    DARIN M. FOSTER
    Attorneys for Plaintiff
    201 12th Street N.W.
    Albuquerque, New Mexico 87102
    (505) 842-8662